2024 IL App (1st) 231876-U

Fourth Division
Filed September 5, 2024

No. 1-23-1876

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| RACHAEL ADAMIAN and PAUL ADAMIAN, as Parents and Next Friends of Dylan Adamian, a Minor, | ) ) ) | |
| Plaintiffs-Appellees, | ) ) | Appeal from the Circuit Court of Cook County |
| v. | ) ) | |
| JENNIFER M. BALASH, M.D., TRE MEDICAL, LTD., ADVOCATE GOOD SAMARITAN HOSPITAL, and ADVOCATE MEDICAL GROUP, | ) ) ) | No. 2022 L 004848 The Honorable Robert F. Harris, |
| Defendants | ) ) | Judge, presiding. |
| (Advocate Good Samaritan Hospital and Advocate Medical Group, Defendants-Appellants). | ) ) ) | |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Rochford and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held:* The trial court abused its discretion by denying the motion to transfer from Cook County to DuPage County because the plaintiffs did not live in Cook County, the underlying cause of action arose entirely in DuPage County, and the case's only connections to Cook County were that one defendant lived in Western Springs, one of the corporate defendants operated hospitals in Cook County that had nothing to do with the present litigation, and a handful of potential witnesses either lived or worked in Cook County.

¶ 2    Plaintiffs Rachael and Paul Adamian, as parents and next friends of their son Dylan, sued Advocate Good Samaritan Hospital and Advocate Medical Group (collectively, Advocate[1]), Jennifer M. Balash, M.D., and TRE Medical, Ltd., in the Circuit Court of Cook County for professional negligence in connection with Dylan's birth at Good Samaritan Hospital, which is in DuPage County. Advocate moved to transfer the action to DuPage County under the doctrine of *forum non conveniens*. The trial court denied the motion. We allowed Advocate's petition for leave to appeal, and we now reverse and remand with instructions to grant the motion and transfer this case to DuPage County.

¶ 3                                    BACKGROUND

¶ 4     This case arises from the alleged negligent medical care and treatment provided at TRE Medical's clinic and then at Good Samaritan Hospital before and during Dylan's birth, care that allegedly resulted in injuries to him. According to the complaint, Rachael went to TRE Medical on the morning of July 30, 2019, complaining of recent abdominal trauma and decreased fetal movement. She was seen by Dr. Balash, who is an obstetrician and gynecologist. Based on certain tests, Dr. Balash decided to admit Rachael to Good Samaritan Hospital for delivery. Upon delivery, which occurred six hours after Rachael was admitted to the hospital, Dylan was born pale, hypertonic, and with low hemoglobin. The complaint alleged, in essence, that Dr. Balash and medical personnel employed by Advocate should have recognized the need for an emergent caesarian section and ordered one sooner than they did.

¶ 5     As noted, the underlying events in this case occurred at TRE Medical's clinic and Good Samaritan Hospital, which are both in Downers Grove, which is in DuPage County. Dr. Balash lives in Western Springs, which is in Cook County, albeit slightly closer to the DuPage County Courthouse than the Richard J. Daley Center. Both now and at the time of the underlying events, Dr. Balash did business in DuPage County, not Cook County. Advocate Health and Hospitals

_____

[1]   Advocate Good Samaritan Hospital and Advocate Medical Group are both assumed names for the same business entity, Advocate Health and Hospitals Corporation.

Corporation, which is the entity that does business as both Advocate Good Samaritan Hospital and Advocate Medical Group, is headquartered in DuPage County, and its registered agent is likewise located in DuPage County; however, through Advocate Medical Group, it operates seven hospitals in Cook County. The Adamians live in Batavia, which is in Kane County. Between them, the parties have identified more than three dozen potential witnesses. The majority of those witnesses either live or work in DuPage County. A minority live or work in Kane County, and a smaller minority live or work in Cook County. One potential witness, a doctor who was allegedly involved in Rachael's care, lives in Cook County and maintains offices Cook, DuPage, Kane, and Lake Counties.

¶ 6      After the Adamians filed suit, Advocate moved to transfer the case to DuPage County pursuant to Illinois Supreme Court Rule 187 (eff. Jan. 1, 2018) and the doctrine of *forum non convieniens*. The Adamians filed a response, Advocate filed a reply, and the court heard argument. On the court's order, the parties then filed additional briefs addressing where Advocate Health and Hospitals Corporation was incorporated and where its principal place of business was. On September 14, 2023, the court denied the motion to transfer in a written order.

¶ 7      In its order, the court analyzed the applicable factors. Weighing in favor of transfer, it found, were the interest in having a localized dispute decided locally; the convenience of the parties, which "slightly" favored transfer because Advocate employees who might be called to testify worked at Good Samaritan Hospital in DuPage County; and the possibility of viewing the premises, although it was not "a significant consideration." Weighing against transfer were the Adamians' choice of forum as plaintiffs, which was entitled to some deference even though they lived in Kane County; the relative administrative burdens, which would be greater in DuPage County because its average time to verdict was fifteen months longer than in Cook County; and the practical consideration of all parties' attorneys being based out of Cook County, although that consideration was entitled to only "minimal weight." The court found that all other factors were neutral. Significantly, the court determined that the ease of access to sources of evidence favored neither venue. It noted that documentary evidence was easily transmitted via e-mail or fax, and it

concluded that potential witnesses were "scattered amongst various counties," including Cook County, so as not to favor either forum. The court also determined that it was not unfair to impose the expense of trial and the burden of jury duty on Cook County and its residents because one defendant, Dr. Balash, was herself a resident of Cook County and another defendant, Advocate Medical Group, operated hospitals in Cook County. Ultimately, finding that "the factors in their totality do not *strongly* favor transfer," the court denied the motion to transfer.

¶ 8    Following the court's denial of the transfer motion, Advocate sought leave to appeal, which we allowed.[2] See Ill. S. Ct. R. 306(a)(2) (eff. Oct. 1, 2020).

¶ 9                                    ANALYSIS

¶ 10    On appeal, Advocate argues that the trial court erred when it denied the motion to transfer to DuPage County based on *forum non conveniens*. The Illinois venue statute generally provides that an action may be filed in any county that is either "the county of residence of any defendant who is joined in good faith" or a "county in which the transaction or some part thereof occurred out of which the cause of action arose." 735 ILCS 5/2-101 (West 2020). Under the statute, multiple counties can be, and often are, proper venues in which the plaintiff may file suit. Nevertheless, not all proper forums are convenient ones, which gives rise to the doctrine of *forum non conveniens*, which is an "equitable doctrine founded in consideration of fundamental fairness and the sensible and effective administration of justice." *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441 (2006). Under this doctrine, trial courts may "decline jurisdiction when trial in another forum 'would better serve the ends of justice.' " *Id.* (quoting *Vinson v. Allstate*, 144 Ill. 2d 306, 310 (1991)).

¶ 11    " 'In most instances, the plaintiff's choice of forum will prevail, provided venue is proper and the inconvenience factors attached to such forum do not greatly outweigh the plaintiff's substantial right to try the case in the chosen forum.' " *First American Bank v. Guerine*, 198 Ill. 2d

---

[2]    Counsel for Dr. Balash and TRE Medical orally joined the motion to transfer in the circuit court, but neither party sought leave to appeal, and neither party has filed a brief.

511, 520 (2002) (quoting *Peile v. Skelgas, Inc.*, 163 Ill. 2d 323, 335-36 (1994)). When plaintiffs select their home forum or the one in which the underlying transaction or injury occurred, it is reasonable to assume that their chosen forum is convenient for them. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 173 (2003). " 'When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.' " *Id.* at 173-74 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)). Although "the *forum non conveniens* standard is difficult for defendants to meet, it does not foreclose legitimate transfers when the balance of factors strongly favors litigation in another forum." *Guerine*, 198 Ill. 2d at 521. Those factors are set out in decisional law, and they reflect the private and public interests at stake when deciding whether a case should be transferred based on *forum non conveniens*. See *Dawdy*, 207 Ill. 2d at 172-74.

¶ 12     A motion to transfer based on *forum non conveniens* is addressed to the trial court's discretion, which is "considerable." *Langenhorst*, 219 Ill. 2d at 441. Reviewing courts must defer to the trial court's decision unless it is shown to have "abused its discretion in balancing the relevant factors," which occurs "only where no reasonable person would take the view adopted by the circuit court." *Id.* at 442. In other words, the issue is "not what decision we would have reached if we were reviewing the facts on a clean slate, but whether the trial court acted in a way that no reasonable person would." *Vivas v. Boeing Co.*, 392 Ill. App. 3d 644, 657 (2009). Our job, then, is not to ascertain what weight we would give the relevant factors, it is to assess only whether the trial court's balancing of the factors exceeded the bounds of reasonable disagreement.

¶ 13     Initially, the Adamians argue that we should affirm the denial of the motion to transfer because the doctrine of *forum non conveniens* is "obsolete" with respect to intrastate transfers due to modern technological advancements that have made it easier to travel and communicate and enabled activities that are traditionally done in person, such as depositions and court proceedings, to occur remotely via videoconference. To the extent that these developments bear on the factors relevant to a *forum non conveniens* analysis, we agree that they should be taken into account.

However, we are not at liberty to deem the doctrine obsolete or alter its contours. For more than forty years, the Illinois Supreme Court has held that the doctrine of *forum non conveniens* is appropriately applied to both interstate and intrastate transfers. *Torres v. Walsh*, 98 Ill. 2d 338, 350-51 (1983). That includes transfers between adjacent counties. *Dawdy*, 207 Ill. 2d at 180. We are bound by those decisions. *People v. Artis*, 232 Ill. 2d 156, 164 (2009). We decline to affirm on the basis that the doctrine is obsolete.

¶ 14                     Deference to the Plaintiffs' Choice of Venue

¶ 15    The initial question is the degree of deference that should be afforded to the Adamians' choice to bring suit in Cook County. As the trial court recognized, because the Adamians live in Kane County and the underlying events occurred in DuPage County, their choice of a foreign venue "is entitled to *somewhat* less deference" than it otherwise would be. (Emphasis in original.) *Langenhorst*, 219 Ill. 2d at 448. At the same time, less is not the same as none. *Id.* At minimum, the Adamians' selection of Cook County indicates that they consider it to be a convenient forum. See *Guerine*, 198 Ill. 2d at 518 ("The defendant cannot assert that the plaintiff's chosen forum is inconvenient to the plaintiff."). Beyond that, their choice of Cook County is a factor that, like any other factor, should be given its " 'proper deference or weight under the circumstances' " of this particular case. *Dawdy*, 207 Ill. 2d at 176 (quoting *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 108 (1990)).

¶ 16    Here, the trial court found that the Adamians' choice of venue was "entitled to some deference." Advocate argues that this was an abuse of discretion because a plaintiff's choice to file suit in a foreign forum makes it " 'reasonable to conclude that the plaintiff engaged in forum shopping to suit his individual interests.' " *Id.* at 174 (quoting *Certain Underwriters at Lloyds, London v. Illinois Central R.R. Co.*, 329 Ill. App. 3d 189, 196 (2002)). That inference may be valid, but it does not follow that the trial court was required to draw it. We cannot say that no reasonable person could have afforded any deference to the Adamians' choice of venue.

¶ 17                              Private Interests

¶ 18    We next examine the private interest factors, which "include the convenience of the parties; the relative ease of access to sources of testimonial, documentary, and real evidence; the availability of compulsory process to secure attendance of unwilling witnesses; the cost to obtain attendance of willing witnesses; the possibility of viewing the premises, if appropriate; and all other practical considerations that make a trial easy, expeditious, and inexpensive." *Dawdy*, 207 Ill. 2d at 172. We note at the outset that the practical differences between Cook County and DuPage County are, in most respects, minimal. Regardless of where this case is litigated or tried, the lawyers will be the same, the evidence will be the same, and the witnesses will be the same. Transferring the case to DuPage County would not make it any easier or harder for the lawyers to request discovery, produce evidence, depose witnesses, and so forth.

¶ 19    As far as we can ascertain, apart from each party's interest in securing a forum that is favorable for their chances of success—which is not a proper consideration in a *forum non conveniens* analysis (see *id.* at 175)—there are only three ways in which it might make a material difference where the case is litigated and tried, all of them having to do with the relative ease and convenience associated with attending in-court proceedings. The significance of these factors, however, is diminished by the fact that Cook and DuPage Counties border one another and are both part of the Chicago metropolitan area and linked by numerous public and private transportation options. See *Susman v. North Star Trust Co.*, 2015 IL App (1st) 142789, ¶ 31 (explaining that the connections between Lake and Cook Counties "reduces any practical problems").

¶ 20    First, it is clear that DuPage County is a more convenient forum for the parties. The DuPage County Courthouse is significantly closer to the Adamians' residence. It is also significantly closer to Good Samaritan Hospital, Advocate's corporate headquarters, and TRE Medical's clinic—and, by extension, the place of work for those entities' employees and for Dr. Balash, who is the president of TRE Medical. Although Dr. Balash lives in Cook County, her home in Western Springs, which borders DuPage County, is actually closer to the DuPage County Courthouse than

it is to the Daley Center, and she attested in an affidavit that "it would be far more convenient for [her] to testify in DuPage County."

¶ 21    Second, it is clear that DuPage County is more convenient for nearly all potential witnesses who might testify at trial. According to a list of treating physicians and potential independent expert witnesses provided by the Adamians to Advocate, Dylan's pediatrician and optometrist are both located in Kane County, which is west of DuPage County. One of his pediatric neurologists is in DuPage County, and the other is in Westchester, which is in western Cook County. All of his various therapists are in either DuPage County or Kane County. The vast majority of potential occurrence witnesses listed by the parties either work at Good Samaritan Hospital or TRE Medical, which are in Downers Grove (DuPage), or work elsewhere but still live in DuPage County. The doctor who is alleged in the complaint to have been negligent but not named as a defendant lives in Chicago and evidently maintains offices in Downers Grove (DuPage), Park Ridge (Cook), St. Charles (Kane), and Libertyville (Lake). The only witnesses for whom the Daley Center might be significantly more convenient are the two who now live out of state, and that is only because of the proximity of the area's major airports to downtown Chicago.

¶ 22    Third, there is one practical consideration that weighs in favor of Cook County, which is that the attorneys of record all maintain offices in downtown Chicago, although counsel for Advocate also has an office in Wheaton, just a short drive from the DuPage County Courthouse. But the convenience of counsel is a factor that should only be accorded " 'little weight' ." *Dawdy*, 207 Ill. 2d at 179 (quoting *Boner v. Peabody Coal Co.*, 142 Ill. 2d 523, 534 (1991)).

¶ 23    With one significant exception, the trial court's analysis of the private interest factors was consistent with the foregoing analysis. It noted that the convenience of the parties favored DuPage County and that the convenience of the lawyers favored Cook County but deserved only "minimal weight." Although the court found that the possibility of viewing the premises favored DuPage County, it also recognized that the nature of the issues in this medical-malpractice action meant that proximity to the hospital was not "significant" from a practical standpoint. It also found that

the choice between DuPage and Cook Counties had no impact on the parties' ability to conduct discovery or the availability of compulsory process, which were both reasonable determinations.

¶ 24     We find, however, that the court took an unreasonable position when it failed to afford any weight to the clear advantage DuPage County has over Cook County as to the convenience of nonparty witnesses and the ease and cost of securing those witnesses' attendance. The Illinois Supreme Court has "held that where the potential trial witnesses are scattered among several counties, including the plaintiff's chosen forum, and no single county enjoys a predominant connection to the litigation, the plaintiff may not be deprived of his or her chosen forum." *Dowdy*, 207 Ill. 2d at 183-84 (citing *Guerine*, 198 Ill. 2d at 526). The trial court determined that this rule applied here based on the fact that several potential witnesses had offices in Kane County, two had offices in Cook County, one had an office in Lake County, and three lived in Cook County. The court's implicit finding that none of these counties had a predominant connection to the litigation was not reasonable. By our count, the parties have disclosed 39 potential witnesses in addition to the Adamians and Dr. Balash. Of those, 27 either live or work in DuPage County. By contrast, only 11 live or work in Kane County, 5 in Cook, and 1 in Lake (the doctor who maintains offices in all four counties). Percentagewise, that amounts to 69% of the witnesses who are in DuPage, 28% in Kane, 13% in Cook, and 3% in Lake.[3] When it comes to the witnesses, DuPage County obviously predominates over the other counties generally and over Cook County in particular. That fact is entitled to at least some weight, and the trial court's decision not to afford it any weight was not reasonable.

¶ 25                                    Public Interests

¶ 26     We now turn our attention to the public interests at stake in the *forum non conveniens* analysis. "The public interest factors include the interest in deciding controversies locally, the unfairness of imposing the burden of jury duty on residents of a forum with little

---

[3]   Because some witnesses live in one county and work in another, the sum of these percentages exceeds 100%.

connection to the litigation, and the administrative difficulties caused by adding litigation to already congested court dockets rather than resolving the case at its origin." *Schuster v. Richards*, 2018 IL App (1st) 171558, ¶ 22.

¶ 27   The interest in deciding this case locally strongly favors DuPage County. To be sure, DuPage County is not the only county that can claim an interest in the case. Kane County can claim an interest because its residents are the plaintiffs. Cook County can claim an interest because two of its residents, Dr. Balash and Advocate Medical Group, are defendants. See 735 ILCS 5/2-102(a) (West 2022) (providing that, for the purpose of venue, corporations are deemed to reside in "any county in which it has its registered office or other office or is doing business"). But all three corporate defendants are residents of DuPage County, so resident involvement is a wash. What is decisive is that the alleged injuries all occurred in DuPage County, and "the location of the accident resulting in litigation is the most substantial factor in giving any county a local interest." *Schuster*, 2018 IL App (1st) 171558, ¶ 37 (citing *Dawdy*, 207 Ill. 2d at 183, and *Peile*, 163 Ill. 2d at 343). The trial court correctly found that this factor weighed in favor of transfer.

¶ 28   The interest in not putting the burden of jury duty on the residents of a county with little connection to the litigation also favors DuPage County. Cook County can claim an interest in the litigation in the sense that it involves some of its residents, but it otherwise has no connection to the case. Again, the allegedly negligent acts took place in DuPage County. Their ongoing consequences are being suffered in Kane County, where Dylan and his parents live. Cook County, by contrast, has no connection beyond the happenstance that two parties reside there—one of them through hospitals having nothing to do with this case. See *Bruce v. Atadero*, 405 Ill. App. 3d 318, 331 (2010) ("Defendant's presence in Cook County for venue purposes does not establish a connection with this action for *forum non conveniens* purposes."). Despite the obviously stronger connection that DuPage County has to this case relative to Cook County, the trial court found that this factor was "neutral." Reasonable people might disagree about how much weight to give it, but this interest undeniably favors DuPage County. The trial court erred by finding that it did not favor either county.

¶ 29    That leaves the administrative difficulties caused by litigating cases in an already congested forum rather than where the dispute originated. Based on statistics showing that the time to verdict in DuPage County is significantly longer than it is in Cook County, the trial court found that this factor weighed against transfer. The interest at stake, though, is not administrative convenience as such. "The concern underlying this factor is the desire to ensure that the availability of finite judicial resources to the residents of a forum is not diminished *by nonresident litigation*." (Emphasis added.) *Starr v. Presence Central & Suburban Hospitals Network*, 2024 IL App (1st) 231120, ¶ 61 (citing *Espinosa v. Norfolk & Western Ry. Co.*, 86 Ill. 2d 111, 121 (1981)). That concern is most significant when a foreign plaintiff sues a foreign defendant over a foreign injury. *E.g.*, *Espinosa*, 86 Ill. 2d at 113-14, 117, 120-25 (Michigan resident who was injured in Michigan rail yard while employed by Virginia-based railroad that operated in several states, including Illinois, brought suit in Madison County, Illinois). Here, the Adamians are residents of Kane County, Dr. Balash is a resident of Cook County, Advocate is a resident of Cook County and DuPage County, and TRE Medical is a resident of DuPage County. Whichever county this case is litigated in, it will not be nonresident litigation. Under these circumstances, this factor cannot weigh against transfer.

¶ 30                                    The Final Balance

¶ 31    In summary, the Adamians' choice of Cook County as the forum in which to litigate this case is entitled to some deference, but the degree of deference is diminished by the fact that they are residents of Kane County. Although the private interests favor DuPage County, its proximity to Cook County and the ample transportation connections between the two counties somewhat limit the practical advantages of transfer. The public interests, however, overwhelmingly favor transferring this matter to DuPage County. That is where Dr. Balash practices, that is where TRE Medical and Good Samaritan Hospital operate, that is where all of the allegedly negligent acts took place, and that is where Dylan was injured. Under any reasonable view, the private and public interests at stake weigh so strongly in favor of transfer that they overcome the deference owed to

the Adamians' decision to file suit in Cook County. The denial of the motion to transfer venue from Cook County to DuPage County based on the doctrine of *forum non conveniens* was an abuse of discretion. We therefore reverse and remand with directions to grant the motion and transfer this action to DuPage County.

¶ 32                                          CONCLUSION

¶ 33    The trial court's order denying the motion to transfer is reversed, and the cause is remanded to the Circuit Court of Cook County with directions to grant the motion to transfer and effectuate the transfer of this action to the Circuit Court of DuPage County.

¶ 34    Reversed and remanded with directions.